| | | |
|---|---|---|
| STATE OF INDIANA | ) | HOWARD COUNTY SUPERIOR COURTS |
| | )SS: | CIVIL DIVISION |
| COUNTY OF HOWARD | ) | CAUSE NUMBER: 34C01-1504-CT-00352 |

SCARLETTE GLOVER,

    Plaintiff,

vs.

HOWARD COUNTY SHERIFF STEVE ROGERS in his official capacity,

ADVANCED CORRECTIONAL HEALTHCARE, INC.,

    Defendants.

FILED
APR 30 2015
KIM WILSON
Clerk Howard Cir. Court

## COMPLAINT

Comes now the Plaintiff, Scarlette Glover (hereinafter "Ms. Glover"), by counsel Scott L. Barnhart of Keffer Barnhart LLP for her Complaint for damages against Defendant Howard County Sheriff Steve Roger (hereinafter "Sheriff Rogers") and Advanced Correctional Healthcare, Inc. (hereinafter "Advanced"):

### INTRODUCTION

1. The Plaintiff seeks money damages against Defendants for violation of rights as guaranteed under the United States Constitution and Indiana common law.

### JURISDICTION AND VENUE

2. Jurisdiction and venue in this Court are proper because portions of the events, omissions, and/or decision making giving rise to this Complaint occurred in Howard County, Indiana.

3. Notice of Tort Claim was timely served upon the Howard County Sheriff's Department and Advanced on or about January 26, 2015.



## PARTIES

4. Ms. Glover is an adult currently residing in Howard County, Indiana.

5. The Howard County Sheriff's Department is a political subdivision of Howard County, Indiana.

6. Advanced is a for-profit entity primarily located in Peoria, Illinois, that, at all times relevant to this complaint, provided medical care services to inmates located at the Howard County Jail.

## FACTUAL BACKGROUND

7. On or about September 14, 2014, Ms. Glover was incarcerated in the Howard County Jail.

8. At the time of Ms. Glover's incarceration, Advanced was responsible for providing medical care for inmates located within the Howard County Jail.

9. Ms. Glover had been housed in the jail for several days when she began to feel ill.

10. On or about September 25, 2014, Ms. Glover completed a Medical Request Form asking to see a doctor about her medication. The following day, medical staff responded, "What is your ? (sic) for the Dr.?" or words to that effect.

11. On or about September 27, 2014, Ms. Glover indicated in a follow-up Medical Request Form that she was experiencing pain, "so severe that it is scaring me" or words to that effect. Ms. Glover also stated that she had a fever of 100.2° F or words to that effect. Medical staff responded, "Seen in u-2 see NN" on or about September 28, 2014.

12. On or about October 4, 2014, Ms. Glover completed another Medical Request Form, indicating that she was still in a lot of pain and requested her medication be switched.

13. On or about October 5, 2014, Ms. Glover completed a Medical Request Form stating, "PLEASE TAKE ME TO THE HOSPITAL!! I feel terrible and I'm not getting better" or

words to that effect. Medical staff replied to Ms. Glover's request on October 6, 2014, by stating, "Hospital visit not indicated or ordered by our doctor at this time," and did not address Ms. Glover's complaint of pain.

14. Ms. Glover asked, through a Medical Request Form, to be allowed Tylenol during the night, as she was feeling worse on or about October 5, 2014. Medical staff responded, "No, you will need to purchase from Comissary (sic)" on or about October 5, 2015.

15. Ms. Glover completed a Medical Request Form and requested an additional sleeping mat, stating, "I'm in horrible terrible pain and can't stop crying. Please" or words to that effect. Medical staff responded, "Two mats not indicated at this time" but did not address Ms. Glover's complaint of pain.

16. In a Medical Request Form completed on or about October 10, 2014, Ms. Glover stated, "I have noticed that when I'm up moving around I'm not in near as much pain, but as soon as I sit or lie down [it's] back 100%. Could you please approve me for a second mat" or words to that effect. Medical staff responded to Ms. Glover's request four days later on or about October 10, 2014, by telling her to discuss the matter at her doctor's visit.

17. On or about October 11, 2014, Ms. Glover asked to see a doctor. Medical staff responded the following day by asking why she needed to see the doctor.

18. On or about October 12, 2014, Ms. Glover completed a Medical Request Form stating, "I am out of my [commissary] tylenol. Could you please send me some. I hardly slept at all last night. I don't know what I'm going to do!" Medical staff responded on or about October 13, 2014, stating only, "Tylenol sent in P.M. med. pass."

19. Ms. Glover indicated that she was very sick and she felt like she was going to die or words to that effect on or about October 12, 2014. Medical staff did not respond until on or about

October 13, 2014, stating in part, "everything with in normal limits. Hospital visit not indicated at this time."

20. On or about October 15, 2014, Ms. Glover was transported to Community Howard Regional Hospital.

21. A short time after arriving at the hospital, Ms. Glover was diagnosed with Acute Lymphoblastic Leukemia.

22. Ms. Glover remained at Community Howard Regional Hospital for approximately five (5) days under the custody of the Howard County Sheriff's Department until she was released from her criminal matter.

23. After her release, Ms. Glover began chemotherapy treatment at IU Simon Cancer Center. Ms. Glover is still receiving treatment.

24. Throughout her incarceration Ms. Glover suffered harm, including, but not limited to: pain, sever discomfort, night sweats, and mental and emotional distress.

25. During Ms. Glover's incarceration, Nurse Andrea told Ms. Glover that she was being overdramatic and that she was exaggerating her pain or words to that effect.

26. Nurse Andrea further stated that she was personally diagnosed with Sciatica and that Ms. Glover should just deal with her pain like Nurse Andrea had to deal with hers or words to that effect.

27. On a separate occasion, Ms. Glover pressed the emergency call button in her cell due to her extreme pain.

28. Ms. Glover pressed that button approximately 8 or 10 times while incarcerated.

29. On at least one occasion, when staff responded they told her that she, "better be dying or bleeding" or words to that effect.

## COUNT I: *Monell* Claim – Sheriff Rogers

30. Plaintiff incorporates by reference all allegations of the foregoing paragraphs as though set forth herein.

31. This claim is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Plaintiff's rights secured by the Eighth Amendment to the United States Constitution.

32. "A local governing body may be liable for monetary damages under §1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009).

33. Defendant implemented a policy, custom, and/or practice that failed to protect Ms. Glover's rights under the Eighth Amendment to the United States Constitution.

34. The Defendant's policy, pattern, and/or practice to ignore or not completely respond to Mr. Glover's Medical Requests forms was a direct and/or moving force behind the delay in Ms. Glover's treatment and her suffering.

35. The Defendant failed to protect Ms. Glover.

36. The Defendant placed Ms. Glover in a position of danger.

37. The Defendant was deliberately indifferent to Ms. Glover's serious medical needs.

38. The Defendant breached its obligation to provide for Ms. Glover's well-being a safety.

39. Due to the Howard County Sheriff's Department's unlawful actions or omissions, Ms. Glover experienced physical pain, mental and emotional distress, and/or other compensable injuries.

**COUNT II: *Monell* Claim – Advanced Correctional Healthcare, Inc.**

40. Plaintiff incorporates by reference all allegations of the foregoing paragraphs as though set forth herein.

41. This claim is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Plaintiff's rights secured by the Eighth Amendment to the United States Constitution.

42. "Private corporations acting under color of state law may, like municipalities, be held liable for injuries resulting from their policies and practices." *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 675 (7th Cir. 2012).

43. "In order to recover against a municipal or corporate defendant under section 1983, it is not enough for the plaintiff to show that an employee of the municipality or corporation violated his constitutional rights; he must show that his injury was the result of the municipality's or corporation's official policy or custom." *Id.*

44. "An official policy or custom may be established by means of an express policy, a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or through the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Id.*

45. Advanced's customs, policies, and/or practices were the direct cause and/or moving force behind the delay in Ms. Glover's treatment and her suffering.

46. Due to Advanced's unlawful actions or omissions, Ms. Glover experienced physical pain, mental and emotional distress, and/or other compensable injuries.

### COUNT III:  Failure to Train – Sheriff Rogers and Advanced

47. Plaintiff incorporates by reference all allegations of the foregoing paragraphs as though set forth herein.

48. Defendants were aware and/or should have been aware of its employees' or agents conduct, which violated Ms. Glover's rights and caused her harm.

49. Despite such awareness, Defendants failed to properly train their employees or implement appropriate procedures and policies.

50. As a direct and proximate result of Defendants' negligence, Ms. Glover suffered compensable injury.

### COUNT IV: *Respondeat Superior* – Sheriff Roger and Advanced

51. Plaintiff incorporates by reference all allegations of the foregoing paragraphs as though set forth herein.

52. A claim may be brought under a theory of *respondeat superior* when an "agent, servant or employee steps beyond the recognized scope of his employment to commit a tortious injury upon a third party." *Tindall v. Enderle*, 162 Ind.App. 524, 529 (Ind. Ct. App. 1974).

53. Defendants' employee or employees committed tortious injury on the Plaintiff while working within the scope of their employment at the Howard County Jail.

54. As a direct and proximate result of the employee's or employees' unlawful conduct, the Plaintiff suffered compensable injury.

**COUNT V: Intentional Infliction of Emotional Distress – Sheriff Rogers and Advanced**

55. Plaintiff incorporates by reference all allegations of the foregoing paragraphs as though set forth herein.

56. The tort of intentional infliction of emotional distress "arises when a defendant: (1) engages in "extreme and outrageous" conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another." *Creel v. I.C.E. & Associates, Inc.*, 771 N.E.2d 1276, 1282 (Ind. Ct. App. 2002).

57. The Defendants engaged in extreme and outrageous conduct that caused Ms. Glover severe emotional distress.

58. Ms. Glover suffered compensable harm as a direct and proximate cause of the Defendants' actions.

**COUNT VI: Negligent Infliction of Emotional Distress – Sheriff Rogers and Advanced**

59. Plaintiff incorporates by reference the allegations of the foregoing paragraphs as though set forth at length herein.

60. A Plaintiff may bring a claim of negligent infliction of emotional distress under the modified impact rule if the Plaintiff, having suffered a direct impact by the negligence of another, also sustains an emotional trauma "which is serious in nature and of a kind and extent normally expected to occur in a reasonable person..." *Shuamber v. Henderson*, 579 N.E.2d 452, 456 (Ind. 1991).

61. The Plaintiff suffered the direct impact of the Defendants' negligent actions.

62. As a result of that direct impact, the Plaintiff reasonably suffered serious and compensable emotional trauma.

63. Defendants are liable to Plaintiff for the harm and severe emotional distress that they have caused her.

### COUNT VII: Negligence – Sheriff Rogers and Advanced

64. Plaintiff incorporates by reference all allegations of the foregoing paragraphs as though set forth herein.

65. The Defendants owed Ms. Glover a duty.

66. The Defendants breached their respective duty or duties by allowing their conduct or inaction to fall below the standard of care that they owed to Ms. Glover.

67. The Defendants' breach of that duty proximately caused compensable injury to Ms. Glover.

### REQUESTED RELIEF

68. Plaintiff respectfully requests:

    a. Damages including compensatory and punitive damages;

    b. Reasonable attorney's fees pursuant to 42 U.S.C. 1988;

    c. All appropriate pre- and post-judgment interest on all amounts that are recovered;

    d. All appropriate injunctive relief;

    e. The costs incurred in the prosecution of this action; and

    f. All just and proper relief.

### DEMAND FOR A JURY TRIAL

69. Plaintiff demands a jury trial pursuant to the Seventh Amendment of the United States Constitution and Article 1, Section 20 of the Indiana Constitution for all claims.

Respectfully Submitted,

*Scott L. Barnhart*
Scott L. Barnhart, #25474-82
Keffer Barnhart LLP
230 East Ohio Street, Suite 600
Indianapolis, Indiana 46204